

FILED

NOV 2 5 2013

U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WESTERN STATES FEDERAL          )
CONTRACTING, LLC,               )
                                )
          Plaintiff,            )
                                )
      vs.                       )  No.: _____
                                )
UNITED STATES DEPARTMENT OF     )
VETERAN AFFAIRS,                )
                                )
          Defendant.           )

---

## COMPLAINT

COMES NOW the Plaintiff, Western States Federal Contracting, LLC ("Plaintiff" or "Western"), by and through undersigned counsel, and complains and alleges as follows:

### PARTIES

1.     Plaintiff Western is, and at all relevant times was, a corporation organized and existing under the laws of the State of Arizona with its principal place of business in the State of Arizona.

2.     The Defendant is the United States of America and its federal agency, the Department of Veteran Affairs (the "VA").

### JURISDICTION AND VENUE

3.     The claims (collectively, the "Claim") raised herein concern a Request for an Equitable Adjustment to the parties' Contract (defined below) by Plaintiff against the VA for extended general conditions and extended home office overhead due to 549 days of delay at a project known as Carl T. Hayden VA Medical Center, MICU-SICU, Project #644-012, Phoenix, Arizona (the "Project").

4.     Plaintiff was the general contractor on the Project pursuant to a *Solicitation, Offer*

*and Award* dated September 30, 2009 (the "Contract") executed by and between Plaintiff and the VA. A true and correct copy of the Contract is attached hereto as Exhibit "1."

5.      The Project was completed on December 31, 2011.

6.      On April 26, 2012, less than six years after its accrual, the Claim was presented to the VA on April 26, 2012. A true and correct copy of the Claim is attached hereto as Exhibit "2."

7.      The Claim was properly certified pursuant to the requirements of 41 U.S.C. § 7103(b).

8.      Pursuant to 41 U.S.C. §§ 7103(d) and 7013(f)(2), the VA  was required to, within 60 days of the Claim's submittal, to either issue a written decision on the Claim or notify Western of the time by which the decision will be made.

9.      On June 20, 2013, less than 60 days after the Claim was submitted, the VA notified Western that it would be issuing a Contracting Officer's Final Decision no later than December 4, 2012.

10.     The VA did not issue a Contracting Officer's Final Decision by December 4, 2012, and, to date, has never issued a final decision on the Claim.

11.     Pursuant to 41 U.S.C. § 7103(f)(5), the failure of the VA to issue a Contracting Officer's Final Decision within the required time period is deemed to be a decision to deny the Claim and authorizes Western to commence this action under 41 U.S.C. § 7104(b).

12.     Jurisdiction over this action is conferred by 28 U.S.C. § 1491(a).

13.     This action arises under the laws of the United States, and is brought pursuant to the Tucker Act, 28 U.S.C. §1491, and the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101, *et seq.*.

14.     This action is timely under 41 U.S.C. §§ 7104(b)(1) and 7104(b)(3) because it is brought less than one year after the December 4, 2012 "deemed denial" decision.

15.     Venue in the United States Court of Federal Claims is proper under 41 U.S.C. § 7104(b)

## THE PROJECT

16.     The Project is located in Phoenix, Arizona and involved the renovation of an existing VA Medical Center.

17.     The Project involved two phases of work. Phase I generally involved the demolition of an existing portion of the facility and construction of a new Intensive Care Unit. Phase II generally involved reconfiguring the old ICU area into a waiting room, a conference room, and seven pre-procedure rooms.

18.     The original phasing of the Project's work, as outlined by the VA during a pre-bid job walk, contemplated completing the demolition and construction of one half of Phase I's new ICU.  The existing ICU section, including patients, would be moved to the newly constructed ICU. After relocation of the ICU was complete, the second half of Phase I work and all of the Phase II work would be simultaneously completed.

19.     Following a competitive bid process, Plaintiff Western was identified as the lowest responsible bidder.

20.     On September 30, 2009, Plaintiff Western and the VA entered into the Contract for the Project.

21.     The Contract provides that Western "shall begin performance within 15 calendar days", which date was October 15, 2009.

22.    The Contract further provides that the Project shall be complete within 150 days after receiving a Notice to Proceed.

23.    When Western mobilized at the Project, it was discovered that the VA's patients were still in the process of being moved out of the existing facilities, which were designated for the demolition and construction of the first half of Phase I work.

24.    Western was not able to begin the Project's work until November 30, 2009, 46-days after the Contractual start date.

25.    Once the Project work began, Western incurred substantial delays and the Project was not complete until December 31, 2011.  Despite the Contract contemplating a 150-day duration, the actual duration was 699 days.

26.    After the Project began, and contrary to the sequencing outlined by the VA during the pre-bid job walk, the VA directed Western to complete Phase I in its entirety, in lieu of the planned concurrent work of Phase II and the second half of Phase I.

27.    Requiring Western to complete all of Phase I before beginning Phase II, rather than allowing for concurrent work, significantly extended the number of days necessary to complete the Project's work.

28.    In addition to delays associated with the re-sequencing the Project's work, Western was also delayed by the inadequate construction design plans.

29.    Upon information and belief, the original final designed plans for the Project were based upon as-built plans from the year 1954.

30.    Upon information and belief, the VA's agent, Smith Group, Inc., did not verify the accuracy of the 1954 as-built plans as compared to the actual facilities existing in the year 2009.

31.     Western encountered numerous inconsistencies and inadequacies in the plans, and over the course of the Project, submitted 80 Requests for Information ("RFI"), the majority of which were due to design issues.

32.     The VA took an average of 28 days to submit a written response to the RFIs, with the longest response time being 173 days, and some RFIs were never addressed by the VA or Smith Group, Inc.

33.     The RFIs were crucial to the progress of the Project's work, and the lack of timely response resulted in Western's and its subcontractor's work crews being at a stand still awaiting direction from the VA.

34.     As a result of the inadequacies of the original designed plans, often identified through Western's RFIs, the plans under went eight revisions resulting in approximately 50% of the original designed plans being significantly altered while the Project work was progressing.

35.     The design issues and the eight major revisions of the plans caused a drastic impact on the nature of the work performed by Western and its subcontractors at the Project. This was documented by 52 change orders issued by the VA to Western and 24 requests for equitable adjustment submitted by Western and its subcontractors.

36.     Architectural and engineering design changes by the VA and its agent, Smith Group, Inc., delayed Western and caused it additional costs for extended general conditions and extended home office overhead.

37.     All of the delaying events discussed in this Complaint were not caused by Western and were caused by the VA.

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT – FAILURE TO EQUITABLY ADJUST THE CONTRACT**

**(Extended General Conditions)**

38.     Plaintiff Western incorporates paragraphs 1 through 37 above as if fully set forth herein.

39.     The Contract governs the relationship between the VA and Western and sets forth the VA's obligation to compensate Western for its completion of the Project.

40.     The Contract further provides the contract price may be adjusted by a Request for Equitable Adjustment.

41.     The Contract is subject to the Contract Disputes Act of 1978, as amended, 41 U.S.C. § 7101, *et seq.*

42.     The Contract requires the VA to compensate Western for any change in Western's scope of work that increases Western's cost of completing the Project.

43.     The Contract requires the VA to compensate Western for any change in Western scope of work that increases the time required for Western's completion of the Project.

44.     The Contract requires the VA to make an equitable adjustment of the Contract amount and to modify the Contract in writing in order to compensate Western for the true value of the work performed.

45.     The Contract requires the VA to make an equitable adjustment of the Contract amount for any increased costs incurred by Western while attempting to comply with demands of the VA.

46.     The Contract contemplates a 150-day period for completing the Project.  The actual number of days it took to complete the Project was 699, or an additional 549 days.

47.    During the course of the Project, the VA compensated Western for 176 days of its extended general conditions, as follows:

        a.    Pursuant to Contract Modification No. 0005 dated September 8, 2010, Western was provided 130 days of compensation for extended general conditions at the rate of $802.00 per day.

        b.    Pursuant to Contract Modification No. 0010 dated May 31, 2011, Western was provided 46 days of compensation for extended general conditions at the rate of $802.00.

48.    True and correct copies of Contract Modification Nos. 0005 and 0010 are attached hereto as Exhibit "3" and "4," respectively.

49.    There exists 373 extra days for which Western was on the Project, yet has not been compensated for its general conditions, calculated as follows:

| | |
|---|---|
| 699 | Total Number of Days |
| *Less* 150 | Original Planned Days per Contract |
| *Less* 176 | Days Compensated by Contract Modification Nos. 0005 and 0010 |
| 373 | |

50.    Western is entitled to be compensated for an additional 373 days for its general conditions, which, at the rate of $802.00, totals $299,146.00.

51.    Despite the substantial increase in the duration and sequencing of the Project's work, Western complied with all terms and conditions of the Contract, fulfilled any and all obligations thereunder, and completed the Project.

52.    The VA has failed to comply with the express and/or implied terms of the Contract by failing to equitably adjust the Contract to compensate Western for its extended general conditions, and such failure constitutes a material breach of the Contract.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT – FAILURE TO EQUITABLY ADJUST THE CONTRACT

### (Extended Home Office Overhead – *Eichley*)

53.     Plaintiff Western incorporates paragraphs 1 through 52 above as if fully set forth herein.

54.     The Contract governs the relationship between the VA and Western and sets forth the VA's obligation to compensate Western for its completion of the Project.

55.     The Contract further provides the contract price may be adjusted by a Request for Equitable Adjustment.

56.     The Contract is subject to the Contract Disputes Act of 1978, as amended, 41 U.S.C. § 7101, *et seq.*

57.     The Contract requires the VA to compensate Western for any change in Western's scope of work that increases Western's cost of completing the Project.

58.     The Contract requires the VA to compensate Western for any change in Western scope of work that increases the time required for Western's completion of the Project.

59.     The Contract requires the VA to make an equitable adjustment of the Contract amount and to modify the Contract in writing in order to compensate Western for the true value of the work performed.

60.     The Contract requires the VA to make an equitable adjustment of the Contract amount for any increased costs incurred by Western while attempting to comply with demands of the VA.

61.     Western bid the Project as a stipulated sum amount anticipating a 150 day duration.

62.     Included within its original budget for its bid was the cost for home office overhead expenses for a total of 150 calendar days.

63.     Western is entitled to recover its home office overhead expenses for the additional 549 days it was working on the Project.

64.     At the time of this Project, Western did not have any other construction projects on its books and, therefore, the Eichleay formula allows for 100% of Western's home office overhead expenses to be attributed to this Project.

65.     During the time that Western was mobilized on the Project, its contract billings for the Project were $2,683.385.76 and its total billings were $2,683,385.76.

66.     Western's home office overhead expenses during the additional 549 days during which it was mobilized at the Project totaled $587,855.20.

67.     Western's daily costs for its home office overhead is $840.99.

68.     Applying the Eichleay formula, Western is entitled to extended home office overhead expenses in the total amount of $461,706.01, calculated as follows:

### Eichleay Formula

| Contract billings<br>Total Billings for<br>the contract period | X | Total Overhead for<br>the contract period | = | Overhead allocable to<br>the contract |
|---|---|---|---|---|
| Overhead allocable to the contract<br>Total Days of Performance | | | = | Daily Contract<br>Overhead |
| Daily Contract Overhead | X | Number of days delayed | = | Extended Overhead |

### Eichleay Formula Applied

| $2,683,385.76<br>$2,683,385.76 | X | $587,855.20 | = | $587,855.20 |
|---|---|---|---|---|
| $587,855.20<br>699 | | | = | $840.99 |
| $840.99 per day | X | 549 delay days | = | $461,706.01 |

69.     Despite the substantial increase in the duration and sequencing of the Project's work, Western complied with all terms and conditions of the Contract, fulfilled any and all obligations thereunder, and completed the Project.

70.     The VA has failed to comply with the express and/or implied terms of the Contract by failing to equitably adjust the Contract to compensate Western for its extended home office overhead, and such failure constitutes a material breach of the Contract.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Western prays that this Court enter a judgment in favor of Western States Federal Contracting, LLC and against the United States Department of Veteran Affairs in the amount of $760,852.01, comprised of $299,146.00 for extended general conditions and $461,706.01 for extended home office overhead, plus interest, costs and attorneys' fees, and for such other and further relief as the Court deems just and proper.


**DATED**: November 22, 2013                    Respectfully submitted,

                                                /s/ Robert J. Berens
                                                Robert J. Berens
                                                Adam D. Melton
                                                Lewis Brisbois Bisgaard & Smith LLP
                                                2929 N. Central Avenue, Suite 1700
                                                Phoenix, Arizona 85012
                                                Tel. (602) 385-1040
                                                Fax (602) 385-1051
                                                E-mail: rberens@lbbslaw.com
                                                *Attorneys for Western States Federal*
                                                *Contracting, LLC*